Samuel M. Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Courtney Booth*
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*_Pro hac vice_ admission to be sought.

_Attorneys for Plaintiff and the Putative Class_

_Additional Counsel Listed on Signature Page_

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILO ILLICH, individually and on behalf of all others similarly situated,<br><br>_Plaintiff,_<br><br>_v._<br><br>INSTANT CHECKMATE, INC., a Delaware corporation,<br><br>_Defendant._ | Case No.  '14 CV 3026 DMS KSC<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT                    CASE NO.

Plaintiff Milo Illich brings this Class Action Complaint and Demand for Jury Trial against Defendant Instant Checkmate, Inc., ("InstantCheckmate") to enjoin its practice of deceptively marketing its online background report products and to obtain redress for all persons injured by such conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.     Defendant owns and operates www.instantcheckmate.com, a website that purportedly offers consumers the ability to obtain background reports to "learn the truth about the history of your family and friends."

2.     InstantCheckmate advertises that its reports contain "REAL police records (driving citations, speeding tickets, felonies, misdemeanors, sexual offenses, mugshots, etc.), background reports, marriage/divorce history, address information, phone numbers, a history of lawsuits and much more." So much information, in fact, that the results can be "shocking."

3.     After viewing such advertisements, consumers seeking background reports can conduct a search on Defendant's website. The website then begins a lengthy "search;" invariably stating that it has found a match and that the consumer should "locate the person you're searching for on this list of possible matches." Throughout the background report search process (as well as in advertisements appearing on internet search results), Defendant misrepresents the actual results available for a given person by indicating that they have, for example, a criminal record or have been divorced.

4.     When consumers click on "ACCESS REPORT" to learn of the details of the purported results, however, Defendant states that the entirety of the search results, without any qualification or limitation, are only available after paying a monthly fee.

5.     When consumers pay the monthly fee, however, they are provided with only some of the information Defendant represented would be included in the background reports. Worse, Defendant informs consumers that the remainder of the advertised information is only available to consumers that pay an additional $19.99 per report. Defendant does not disclose in any manner prior to the submission of payment information for the monthly access fee that any information will be withheld until another payment is made. It is, in essence, a classic "bait and switch" marketing practice.

6.     By and through these practices, Defendant has deceived thousands of consumers throughout the United States into paying $22.86 or more for subscriptions to access reports that do not contain what was promised. In order to redress these deceptive practices, Plaintiff Milo Illich, on behalf of himself and a class of similarly situated individuals, brings this suit seeking among other things, injunctive relief, damages, and restitution.

## PARTIES

7.     Plaintiff Milo Illich is a natural person and citizen of the State of California.

8.     Defendant Instant Checkmate, Inc., is a corporation incorporated in and existing under the laws of the State of Delaware with its principal place of business located at 4110 Mission Boulevard, Suite 200, San Diego, California 92109. InstantCheckmate does business throughout the United States and the State of California, including in this District.

## JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

1        10.     This Court has personal jurisdiction over Defendant because

2   Defendant conducts business in California, the events giving rise to this lawsuit

3   occurred, in substantial part, in California, and Defendant resides and is

4   headquartered in this District.

5        11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because

6   Defendant resides and maintains its headquarters and principal place of

7   business in this District.

**FACTUAL BACKGROUND**

**I.      Overview of Defendant.**

10        12.     Defendant InstantCheckmate purports to be a leading provider of

11   online background reports and claims to have access to millions of searchable

12   records. Defendant states on its homepage, "Our search service looks through

13   county, state and federal databases to ensure you get the most amount of data

14   possible. We also search social sites to help you find unknown social profiles."

15        13.     Defendant heavily promotes its reports through online

16   advertisements and search engine marketing, including indicating that specific

17   records are available for a specific person.



(**Figure 1.**)



(**Figure 2.**)[1]

<hr>

[1]     Latanya Sweeney, *Discrimination in Online Ad Delivery*, Queue 11, 3, at
10 (Mar. 2013) (available at doi.acm.org/10.1145/2460276.2460278) (noting
that Defendant's ad represents author as having a criminal record though
Defendant's own background report confirms that she does not.)

14.    Once a consumer clicks on the ads, they are directed to Defendant's homepage where Defendant provides numerous representations about what information its reports will provide. For example, as noted in <u>Figure 3,</u> Defendant represents it provides "30 different data points" and "unlimited reports."



(**Figure 3.**)

15.    The website first prompts the consumer to enter the name of the subject of the background check. Once the name is entered, Defendant displays an animated graphic depicting a "search" for the subject. (*See* <u>Figure 4.</u>) As the "search" is progressing, Defendant represents that certain information has purportedly been found by placing a green checkmark next to an information category. (*See* <u>*id.*</u>)





(**Figure 4.**)[2]

16.     Next, Defendant states that its "database found" a match and that "the content in this list has been updated from our secure database within the last 24 hours." (*See* Figure 5.) Defendant also causes a green "ACCESS REPORT" button to appear that will ostensibly grant access to the report. (*See id.*)

---

[2]     The name of the person being searched has been redacted to protect his or her privacy.



(**Figure 5.**)

17.     Additionally, this screen provides a column for "Featured Data" (circled in red) which includes symbols representing that Defendant's report for the listed persons contains arrest records, marriage records, auto ownership, divorce records, contact information, and location information.

18.     A consumer who clicks on the "access report" button is then forced to sit through a five-minute long animation (deceptively) depicting a search. During this "search," Defendant represents that it is "preparing your report" and that it is "accessing" "arrest records," "marriage records," and gathering information about "related persons," "licenses," and information about "sex offenders." (*See* Figure 6.) As before, Defendant displays green check marks to indicate a positive match for the searched person.

1
2
3
4
5
6
7
8
9
10



(**Figure 6.**)

11    19.    Defendant continues in this vein by claiming that it is gathering

12 "social media data." Here, Defendant yet again uses green checkmarks in an

13 attempt to convey that information has been affirmatively found.

14
15
16
17
18
19
20
21
22



(**Figure 7.**)

23    20.    Defendant then claims that the "report is ready to download." At

24 this point, Defendant shows a purported official state seal (which it lacks

25 authority to use), claims that the report "includes data gathered from hundreds

26 of county, state, and federal data sources," and provides a list of data that will

27 be included in the report. (*See* Figure 8.)

28



(**Figure 8.**)

21.     After a consumer clicks on Defendant's "Continue & Download" button, they are forced to wait through another round of animations, ostensibly designed to increase the reports' credibility. (*See* Figure 9, showing sample screenshots from Defendant's "Continue and Download" process"). Defendant claims that while it is "Downloading [the] Report," it is getting the subject's personal information, arrest records, location history, and sex offender information.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





(**Figure 9.**)

22.    Defendant then, for the first time, represents that the report will require—at the minimum—$9.86 per month[3]. Defendant also adds, falsely, "[w]e don't believe in hidden fees" or "individual report costs," *but* that it does "believe in" "[u]nlimited reports." (*See* Figure 10.)

---

[3]    Consumers are later informed that the $9.86 monthly fee is only available if they pay $59.56 for a six-month subscription.



(**Figure 10.**)

23. When the "Downloading Report" process is complete, Defendant leads consumers to a webpage where it asks for payment information for access to the report. Defendant's page fails to indicate that information will be withheld unless a consumer pays fees above and beyond the initial monthly access fee. At the time a consumer submits their payment information, they are unequivocally led to believe that paying a monthly fee will allow for access to *all available information*.

24. The checkout page also includes a section describing what the report will include. Here, Defendant first states that "this report *may* include" a list of information categories and then places green check marks next those categories—and an exclamation point contained in a red circle next to "criminal arrest records"—to give the appearance that positive results have been in fact located. (*See* Figure 11.) In reality, Defendant's reports *never* include email addresses, for example, and Defendant's report for the individual searched below did not contain any criminal or arrest records.





(**Figure 11.**)

25.    In an effort to bolster its pricing deception, Defendant causes a "pop-up" screen to appear on consumers' screens while they are viewing the checkout page. The pop-up screen purports to offer a specific trial offer and indicates that a consumer may "run as many searches as you want, *with no per report fees.*" (*See* Figure 12.) (Emphasis added).



(**Figure 12.**)

26.     After a consumer submits payment for the monthly access fee, Defendant provides them with a report that is substantially similar in appearance to the report shown in <u>Figure 13</u>, on the following page.

27.     Yet, the provided reports do not contain the information Defendant indicated would be included. For example, Defendant often indicates divorce records as being included in a report's "Featured Data," yet the paid-for reports invariably do not contain such records. Worryingly, where Defendant indicates that a report's "Featured Data" includes criminal records, there are similarly none.

\*                    \*                    \*

\*                    \*                    \*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



(**Figure 13**, showing representative background report.)

22
23
24
25

28.    Moreover, Defendant represents to consumers that have already

26
27
28

paid to access a report that it is actively withholding information. Defendant

claims that it has gathered from "advanced sources" that, for an unstated reason,

1  InstantCheckmate "can't show [] in a standard report." (*See* <u>Figures 14 and 15</u>.)



(**Figure 14.**)



(**Figure 15.**)

29.   Defendant provides a long list of data points that are included in the "Premium Report," such as contact information, location information, business associates, sexual offenses, licenses, properties owned, and corporate affiliations. Notably, Defendant's original representations promised that many (if not all) of these same data points would be available within the initial (*i.e.*, non-Premium) report.

30.   When an individual clicks on the "view premium data now" button, Defendant causes another pop-up to appear that informs the consumer that the data is "hidden" and exclusive to the premium report. Defendant also represents that the premium report may contain sexual offences, criminal

1   convictions, and "much more."



(**Figure 16.**)



(**Figure 17.**)

31.     As previously indicated, the premium report contains additional information that Defendant previously represented would be included in the first report such as contact info, location information, relatives, and associates.

32.     Likewise, just like representations made for the standard report, much of the promised information available through a premium report is simply not provided upon payment.

## II.    Facts Relating to Plaintiff Milo Illich.

33.    In August 2014 Plaintiff Illich encountered an advertisement for InstantCheckmate.com while browsing the internet. The advertisement Plaintiff Illich clicked on was substantially similar to the advertisement shown in <u>Figure 1</u> and included a representation that he would receive access to myriad information, including arrest records. Once he clicked on the advertisement, Illich was taken to a webpage hosted on www.instantcheckmate.com where he viewed representations substantially similar to those described above concerning information contained in one of Defendant's reports. Based on those representations, Plaintiff Illich entered the name and location of the person for which he wanted to conduct a background check search.

34.    Thereafter, Defendant caused animations and pop-ups to appear on Plaintiff's screen informing him that dozens of sources were being searched and numerous individual pieces of information were being compiled about the searched person. Defendant then requested that Plaintiff Illich provide more information regarding the searched person. After he provided such information, Defendant again caused animations and pop-ups to appear, representing that additional information sources were being searched and that Defendant was compiling a comprehensive report about the searched person.

35.    After approximately five minutes of such animations, Defendant indicated that it had compiled a report containing sufficient information about the searched person. At this time, Defendant stated that before Plaintiff Illich could access the report he must pay at least $22.86.

36.    Relying on Defendant's representations that it had found and compiled specific information about the searched person, Plaintiff Illich submitted his payment information and paid the $22.86 access fee.

37.    Defendant then provided Illich access to the report. However, Defendant's report did not contain the information Defendant represented that it

would include. Specifically, Defendant represented to Plaintiff Illich that the report would include "police records," such as "driving citations, speeding tickets, felonies, misdemeanors, sexual offenses, mugshots" and more. Instead, the report contained grossly inaccurate information, information that would otherwise be freely available on the internet, and did not include the subject's police records already known already known to Plaintiff Illich. In addition, Defendant stated that certain information it previously represented would be included in the $22.86 report was only accessible if Plaintiff paid a one-time fee of $19.99. Having been deceived once already, Plaintiff did not agree to pay $19.99 for the purportedly available information.

38.     Had Plaintiff Illich known the report for $22.86 was not going to contain the information he was promised—and that he would have had to pay an additional $19.99 to access that information—he would not have submitted his credit card information to pay for Defendant's report.

## CLASS ALLEGATIONS

39.     **Class Definition:** Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a proposed class defined as follows:

> <u>Class</u>: All persons in the United States who paid an access fee for a background report on InstantCheckmate.com.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal

1    representatives, successors, and assigns of any such excluded persons.

2        40.    **Numerosity**: The exact number of the members of the Class is

3    unknown and not available to Plaintiff at this time, but it is clear that individual

4    joinder is impracticable. Defendant has deceived and profited from thousands of

5    consumers who fall into the definition set forth above. Members of the Class

6    can be identified through Defendant's records.

7        41.    **Commonality**: There are many questions of law and fact common

8    to the claims of Plaintiff and the Class, and those questions predominate over

9    any questions that may affect individual members of the Class. Common

10   questions for the Class include, but are not limited to the following:

11            a)    Whether Defendant intentionally misrepresented the

12                  information included in its reports and the actual price of

13                  such reports;

14            b)    Whether Defendant's conduct described herein was willful;

15            c)    Whether Defendant's conduct described herein constitutes a

16                  violation of California's Consumers Legal Remedies Act

17                  (Ca. Civ. Code. §§ 1750 *et seq.*);

18            d)    Whether Defendant's conduct described herein constitutes a

19                  violation of the Unfair Competition Law (Cal. Bus. & Prof.

20                  Code §§ 17200, *et seq.*);

21            e)    Whether Defendant's conduct described herein constitutes a

22                  violation of the False Advertising Law (Cal. Bus. & Prof.

23                  Code §§ 17500, *et seq.*);

24            f)    Whether Defendant's conduct described herein constitutes

25                  Fraud in the Inducement;

26            g)    Whether Defendant's conduct described herein constitutes

27                  Fraud by Omission; and

28            h)    Whether Defendant's conduct described herein constitutes a

Breach of Contract.

42.  **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, as Plaintiff and other members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions that were made uniformly with Plaintiff and the public.

43.  **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

44.  **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

45.  **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not

1   be preferable to a class action, because individual litigation would increase the

2   delay and expense to all parties due to the complex legal and factual

3   controversies presented in this Complaint. By contrast, a class action presents

4   far fewer management difficulties and provides the benefits of single

5   adjudication, economy of scale, and comprehensive supervision by a single

6   Court. Economies of time, effort, and expense will be fostered and uniformity

7   of decisions ensured.

8   46.    Plaintiff reserves the right to revise the foregoing "Class

9   Allegations" and "Class Definition" based on facts learned through additional

10   investigation and in discovery.

### FIRST CAUSE OF ACTION
**Violation of Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of Plaintiff and the Class)**

14   47.    Plaintiff incorporates by reference the foregoing allegations as if

15   fully set forth herein.

16   48.    The Consumers Legal Remedies Act ("CLRA") applies to

17   Defendant's actions and conduct as described herein because it extends to

18   transactions that are intended to result, or which have resulted, in the sale of

19   goods or services to consumers.

20   49.    Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

21   50.    Plaintiff and each member of the Class is a "consumer" as defined

22   by Cal. Civ. Code § 1761(a).

23   51.    The subscriptions purchased by Plaintiff and the Class members

24   are "services" within the meaning of Cal. Civ. Code § 1761(a).

25   52.    As described herein, Defendant has engaged in deceptive practices,

26   unlawful methods of competition, and/or unfair acts as defined by Cal. Civ.

27   Code §§ 1750 *et seq.*, to the detriment of Plaintiff and the Class.

28   53.    Defendant, acting with knowledge, intentionally and unlawfully

---

brought harm upon Plaintiff and the Class by representing that its subscriptions allowed unlimited access to background reports containing information, such as criminal records, divorce records, sexual offender status, and contact information, among others, when in fact Defendant's representations were false.

54.    Additionally, Defendant, acting with knowledge, intentionally and unlawfully brought harm upon Plaintiff and the Class by failing to disclose the true cost of its background report products.

55.    Specifically, Defendant represented that by subscribing to its service, at a minimum charge of $9.86 per month, that Plaintiff and the Class members would receive access to "unlimited reports" containing police arrest records, contact information, speeding tickets, phone numbers, sex offender status, felonies & misdemeanors, marriage & divorce records, licenses & permits, current residence, relatives & associates, firearm licenses, and "much much more." (*See* Figures 8, 10.)

56.    In fact, however, when Plaintiff and Class paid for their subscriptions to Defendant's website, the reports lacked data that Defendant had indicated would be included, such as divorce data, criminal records, phone numbers and other contact information, professional licenses, hunting and fishing permits, weapons permits, sexual offenses, and other forms of so-called "Premium Data." (*See* Figures 13–15.) In order for Plaintiff and the Class to access that information—which was originally promised as part of the base subscription price—Plaintiff and the Class would have been required to pay an additional $19.99 per report.

57.    As such, Defendant violated Cal. Civ. Code § 1750 in at least the following respects:

   a.    By using and allowing the use of false testimonials to misrepresent the source, sponsorship, approval, or certification of Defendant's background report

1    subscriptions, in violation of § 1770(a)(2);

2           b.     By misrepresenting the affiliation, connection, or association

3                with, or certification by, another by placing a purported

4                official state seal in the marketing of Defendant's

5                background reports, in violation of § 1770(a)(3); and

6           c.     By advertising and charging for Defendant's background

7                report subscriptions with the intent to not sell them as

8                advertised, in violation of § 1770(a)(9).

9    58.    Defendant's unfair or deceptive acts or practices were capable of

10    deceiving a substantial portion of the purchasing public.

11    59.    Plaintiff and the Class relied upon Defendant's false and deceptive

12    advertising described herein, including its false representations that certain

13    information would be included in a standard report and that the monthly

14    subscription fees would allow unlimited access to full background reports, and

15    its concealment the fact that consumers would need to pay additional fees to

16    access the full, as-advertised, reports.

17    60.    The injuries of which Plaintiff and members of the Class complain

18    are a direct and proximate result of Defendant's violations of the law and

19    wrongful conduct described herein.

20    61.    Under Cal. Civ. Code § 1780(a), Plaintiff, individually and on

21    behalf of the Class, seeks an injunction requiring Defendant to cease and desist

22    the illegal conduct alleged in this Complaint, and all other appropriate remedies

23    for their violations of the CLRA. For the sake of clarity, Plaintiff explicitly

24    disclaims any claim for damages under the CLRA at this time.

25    **SECOND CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**

26    **Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

27    **(On Behalf of Plaintiff and the Class)**

28    62.    Plaintiff incorporates by reference the foregoing allegations as if

1   fully set forth herein.

2       63.    California's Unfair Competition Law ("UCL"), Cal Bus. & Prof.

3   Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting

4   fair competition in commercial markets for goods and services.

5       64.    The UCL prohibits any unlawful, unfair, or fraudulent business act

6   or practice, including the employment of any deception, fraud, false pretense,

7   false promise, misrepresentation, or the concealment, suppression, or omission

8   of any material fact. A business practice need only meet one of the three criteria

9   to be considered unfair competition.

10       65.    As alleged herein, Defendant's continued utilization and/or

11   knowledge of unlawful and unconscionable marketing practices constitute

12   unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code

13   §§ 17200, *et seq.*

14       66.    By misrepresenting the scope of information available in, and the

15   nature of, the background reports accessible through its monthly subscriptions,

16   and by inducing Plaintiff and the Class members to proffer payment to

17   Defendant based on those misrepresentations, Defendant has engaged in

18   deceptive trade practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et*

19   *seq.*

20       67.    The characteristics of a product or service are material terms of

21   any transaction because they are likely to affect a consumer's choice of, or

22   conduct regarding, whether to purchase a product. Any deception related to

23   characteristics and price of a consumer product or service is materially

24   misleading.

25       68.    Defendant's misrepresentation of the true characteristics of its

26   monthly subscriptions, and of the true price and characteristics of its

27   background reports, is designed to, and likely to, mislead a reasonable

28   consumer acting reasonably under the circumstances.

69.    The injury caused by Defendant's conduct is not outweighed by any countervailing benefits to consumers or competition (as neither consumers nor competition benefit from Defendant's misrepresentations) and the injury is one that consumers themselves could not reasonably have avoided.

70.    Defendant has also violated the "fraudulent" prong of the UCL in that Defendant's statements, advertisements, and representations regarding what the monthly subscriptions to Defendant's background reports include (and at what price) are false and likely to deceive a reasonable consumer. Further, Defendant's acts constitute fraud in the inducement and fraud by omission.

71.    Defendant has also violated the "unlawful" prong of the UCL in that its conduct violated the Consumer Legal Remedies Act (Cal. Bus. & Prof. Code §§ 1750, *et seq.*) and California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*).

72.    Plaintiff and the Class have suffered harm as a proximate result of Defendant's violations of law and wrongful conduct in the form of monies lost.

73.    Pursuant to Cal. Bus. & Prof. Code §§ 17203, Plaintiff seeks an order (i) permanently enjoining Defendant from engaging in the conduct described herein; (ii) awarding Plaintiff and the Class actual damages in the form of monies paid for Defendant's products; and (iii) requiring Defendant to pay reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Pro. § 1021.5.

### THIRD CAUSE OF ACTION
### Violation of False Advertising Law
### Cal. Bus. & Prof. Code §§ 17500 *et seq.*
### (On Behalf of Plaintiff and the Class)

74.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.    California's False and Misleading Advertising Law ("FAL") prohibits corporations from intentionally disseminating advertisements for

products or services that are "unfair, deceptive, untrue, or misleading." Cal. Bus. & Prof. Code §17500.

76.    As alleged herein, Defendant designed and disseminated advertising and representations that it knows or should reasonably know are false and misleading because it misrepresents the actual characteristics and price of the subscriptions to its services.

77.    Defendant actively misrepresents the benefits offered under by its monthly subscriptions, as well as the true price of its background reports, and the scope of information available at each price point.

78.    Specifically, while Defendant represented that its monthly subscription would offer *unlimited* access to complete background reports, the monthly subscriptions only offered limited, incomplete versions of the background reports. To access complete reports—including information advertised as being available as part of the monthly subscription, such as divorce data, criminal records, phone numbers and other contact information, professional licenses, hunting and fishing permits, weapons permits, sexual offenses—Plaintiff and the Class were then required to pay an additional (and undisclosed prior to the purchase of the monthly subscription) one-time fee per report.

79.    By committing the acts alleged in this Complaint, Defendant has disseminated untrue and/or misleading statements through online advertising and its website in order to sell its background report products, in violation of the proscriptions of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

80.    Plaintiff and members of the Class were all charged monies by Defendant for its background report products, and they would not have paid those costs had they known they would not get the information they were promised, or that they would need to pay undisclosed fees to obtain it.

81.    Accordingly, Plaintiff and members of the Class have suffered

injury in fact and lost money as a result of Defendant's acts of false advertising. Plaintiff seeks an order (i) permanently enjoining Defendant from engaging in the fraudulent conduct described herein; (ii) awarding Plaintiff and the Class actual damages in the form of monies paid for Defendant's products; and (iii) requiring Defendant to pay reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

### FOURTH CAUSE OF ACTION
**Fraud in the Inducement**
**(On Behalf of Plaintiff and the Class)**

82.     Plaintiff incorporates by reference the foregoing allegations.

83.     As described with particularity herein, Defendant has designed, and disseminated false and misleading advertising and statements promoting its background report products. This conduct includes, but it is not limited to, promoting and advertising subscriptions to its background report services as offering unlimited access to complete background reports, when, in fact, the subscriptions offered access only to limited reports, and consumers were required to pay additional fees in order to access complete reports.

84.     Thus, Defendant also advertised the subscriptions to background report services without disclosing the actual characteristics of the subscription and the true cost of accessing the complete reports, which are material terms of any transaction.

85.     Defendant promoted and charged for its background report subscriptions with full knowledge that consumers were acting in reliance on its false statements.

86.     Through a series of advertisements, representations, omissions, and false statements regarding its background report products, Defendant misrepresented and obscured the actual cost and characteristics of its subscriptions and background reports in order to induce members of the public

1  to purchase them.

2      87.    Defendant took concrete and intentional steps to misrepresent the

3  actual prices and characteristics of its subscriptions and background reports.

4      88.    Defendant intentionally designed its website and checkout process

5  to increase the rates of conversion (*i.e.*, sales) by misrepresenting the

6  characteristics of its subscriptions and intentionally concealing the actual prices

7  to be charged to obtain all advertised information.

8      89.    By committing the acts alleged in this Complaint, Defendant has

9  designed and disseminated untrue and misleading statements through fraudulent

10  advertising in order to sell or induce members of the public to purchase

11  Defendant's subscriptions.

12      90.    The price of a service is a material term of any transaction because

13  it directly affects a consumer's choice of, or conduct regarding, whether to

14  purchase a service. Any deception or fraud related to the price of a consumer

15  product is materially misleading.

16      91.    The misrepresentation or omission of the characteristics of a

17  service is likely to mislead a reasonable consumer who is acting reasonably

18  under the circumstances.

19      92.    Defendant knew of the falsity of its representations regarding the

20  background report subscriptions it marketed and charged for.

21      93.    Defendant intended that its deceptive and fraudulent

22  misrepresentations and omissions would induce consumers to rely and act by

23  submitting their contact and payment information.

24      94.    Defendant charged and collected from Plaintiff and members of

25  the Class monies without clearly and conspicuously stating the actual prices

26  necessary to obtain all available information as well as failing to disclose the

27  actual characteristics (*e.g.*, the information contained in the reports) of its

28  subscriptions. Accordingly, Plaintiff and members of the Class have suffered

injury in fact and lost money in justifiable reliance on Defendant's misrepresentations and omissions of material fact.

95.     In deceiving Plaintiff and the Class by creating, enhancing, and supporting advertising that fails to clearly and conspicuously disclose, and in fact actively misrepresents, the actual prices and characteristics of its background report subscriptions, and inducing Plaintiff and the Class to proffer payment based on those misrepresentations, Defendant has engaged in fraudulent practices designed to mislead and deceive consumers.

96.     Plaintiff and the Class have suffered harm as a proximate result of Defendant's violations of law and wrongful conduct.

97.     Plaintiff seeks an order (i) permanently enjoining Defendant from engaging in the fraudulent conduct described herein; (ii) awarding Plaintiff and the Class actual damages in the form of monies paid for Defendant's subscriptions; and (iii) requiring Defendant to pay reasonable costs and attorneys' fees.

### FIFTH CAUSE OF ACTION
### Fraud By Omission
### (On Behalf of Plaintiff and the Class)

98.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

99.     Based on Defendant's misrepresentations and omissions, Plaintiff and the Class reasonably expected that Defendant's subscriptions would include certain characteristics and could be fully obtained for a fixed price. Specifically, Defendant's misrepresentations and omissions reasonably led Plaintiff and the Class to believe that their monthly subscriptions would allow them access to unlimited complete background reports. As described above, however, that was not the case.

100.   At all times, Defendant knew that the actual characteristics of its

1   background check subscriptions, and the prices of its background reports (and
2   what information they would contain) were not clearly and conspicuously
3   disclosed.

4       101.   Defendant was under a duty to Plaintiff and the Class to disclose
5   the true characteristics and prices of its background report subscriptions
6   because:

7           a)   Defendant was in a superior position to know the true state
8       of facts about the actual price and characteristics of those subscriptions;

9           b)   Plaintiff and the Class members could not reasonably have
10      been expected to learn or discover that Defendant was concealing the
11      actual price and characteristics of its background report subscriptions;
12      and

13          c)   Defendant knew that Plaintiff and the Class Members could
14      not reasonably have been expected to learn or discover the actual price of
15      its background report subscriptions.

16      102.   The facts Defendant intentionally concealed from Plaintiff and the
17  Class were material in that a reasonable consumer would have considered them
18  to be important in deciding whether to purchase Defendant's products. Had
19  Plaintiff and the Class known that they would have had to pay additional fees to
20  access the full reports advertised as being included in the subscriptions, they
21  would not have paid for their subscriptions.

22      103.   Defendant concealed or failed to disclose the true prices and
23  characteristics of its services in order to induce Plaintiff and the Class to act
24  thereon and proffer payment. Plaintiff and the Class justifiably relied on
25  Defendant's omissions to their detriment.

26      104.   As a direct and proximate result of Defendant's misconduct,
27  Plaintiff and the Class have suffered actual damages in the form of monies paid
28  to purchase Defendant's products.

105. Plaintiff seeks an order (i) permanently enjoining Defendant from engaging in the fraudulent conduct described herein; (ii) awarding Plaintiff and the Class actual damages in the form of monies paid for Defendant's products; and (iii) requiring Defendant to pay reasonable costs and attorneys' fees.

### SIXTH CAUSE OF ACTION
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

106. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

107. In reliance upon Defendant's misrepresentations and deceptive advertising, Plaintiff and Class members entered into contracts with Defendant to purchase background report subscriptions. A material and inducing term of the contracts was Defendant's representations regarding (i) what information would be available in the reports as part of the subscriptions; and (ii) what the total cost would be to obtain the information promised.

108. As a result of Defendant's misrepresentations detailed in this Complaint, Plaintiff and the Class were not provided with the information Defendant indicated would be included with the reports, and were not able to obtain all available information for the advertised price, each in breach of the consumer retail contracts.

109. Defendant breached its contractual obligations by failing to provide all information it stated would be included, as well as not disclosing it would require Plaintiff and Class members to pay additional fees to obtain what information it did have, thereby breaching its contracts with Plaintiff and the other members of the Class.

110. At all times relevant to this action, Defendant acted willfully and with the intent to breach contracts entered into with Plaintiff and the Class.

111. Plaintiff and the Class have fully performed their contractual

1   obligations.

2        112.    Plaintiff and the Class have suffered damages as a direct result of

3   Defendant's unlawful and wrongful practices described herein in the form of

4   monies paid and lost.

5        113.    As a result, Plaintiff seeks an order (i) permanently enjoining

6   Defendant from engaging in the conduct described herein; (ii) awarding

7   Plaintiff and the Class actual damages in the form of monies paid for

8   Defendant's products; and (iii) requiring Defendant to pay reasonable costs and

9   attorneys' fees.

10                                  **PRAYER FOR RELIEF**

11        WHEREFORE, Plaintiff Milo Illich on behalf of himself and the Class

12   respectfully request that the Court enter an order:

13        A.    Certifying this case as a class action on behalf of the Class defined

14   above, appointing Milo Illich as the representative of the Class, and appointing

15   his counsel as class counsel;

16        B.    Declaring that Defendant's actions, as set out above, violate the

17   CLRA (Cal. Civ. Code §§ 1750, *et seq.*); UCL (Cal. Bus. & Prof. Code §§

18   17200 *et seq.*); the FAL (Cal. Bus. &Prof. Code §§ 17500, *et seq.*), and

19   constitute fraud by omission, fraud in the inducement, and breach of contract;

20        C.    Award injunctive relief and other relief as is necessary to protect

21   the interests of the Class, including, *inter alia*, an order: (i) prohibiting

22   Defendant from engaging in the wrongful and unlawful acts described herein,

23   and (ii) awarding Plaintiff and the Class actual damages paid for Defendant's

24   products;

25        D.    Awarding Plaintiff and the Class their reasonable litigation

26   expenses and attorneys' fees;

27        E.    Awarding Plaintiff and the Class pre- and post-judgment interest,

28   to the extent allowable; and

1      F.     Awarding such other and further relief as the Court deems

2 reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated:  December 30, 2014      **MILO ILLICH,** individually and on behalf of all others similarly situated,

By: /s/ Samuel Lasser
      One of Plaintiff's Attorneys

Samuel M. Lasser (SBN – 252754)
slasser@edelson.com
EDELSON PC
1934 Divisadero Street
San Francisco, California 94115
Tel: 415.994.9930
Fax: 415.776.8047

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Courtney Booth*
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Douglas J. Campion (SBN – 75381)
doug@djcampion.com
LAW OFFICES OF DOUGLAS J CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, California 92108
Tel: 619.299.2091
Fax: 619.858.0034

*Pro hac vice admission to be sought.

*Attorneys for Plaintiff and the Putative Class*