1   **VENABLE LLP**
    Ari N. Rothman (SBN 296568)
2     arothman@venable.com
    2049 Century Park East, Suite 2100
3   Los Angeles, CA  90067
    Telephone:   (310) 229-9900
4   Facsimile:    (310) 229-9901

5   Damon W.D. Wright (*pro hac vice forthcoming*)
      dwdwright@venable.com
6   575 7th Street, NW
    Washington, DC  20004
7   Telephone:   (202) 344-4000
    Facsimile:    (202) 344-8350

8
    Attorneys for Defendant INSTANT CHECKMATE, INC.
9

10

11                  **UNITED STATES DISTRICT COURT**

12                 **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  MILO ILLICH, individually and on behalf   | CASE NO. 14-CV-3026-DMS-KSC
    of all others similarly situated,
                                              | CLASS ACTION
15                Plaintiff,
                                              | Hon. Dana M. Sabraw
16         vs.
                                              | **DEFENDANT INSTANT**
17  INSTANT CHECKMATE, INC., a               | **CHECKMATE, INC.'S**
    Delaware corporation,                     | **MEMORANDUM OF POINTS**
18                                            | **AND AUTHORITIES IN**
                  Defendant.                  | **SUPPORT OF ITS MOTION TO**
19                                            | **COMPEL ARBITRATION**

20                                            | **Date:  March 27, 2015**
                                              | **Time: 1:30 p.m.**
21

22

23

24

25

26

27

28

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

Defendant Instant Checkmate, Inc. ("ICM") moves this Court to compel arbitration of Plaintiff Milo Illich's ("Illich") claims on an individual basis pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), and to dismiss this action because Illich expressly agreed to binding arbitration and a class action waiver when he subscribed to and purchased services on ICM's website.

## INTRODUCTION

ICM is a web-based business, located at www.instantcheckmate.com, that provides people finder and public records information to consumers on a paid subscription basis. On August 3, 2014, Illich visited ICM's website and purchased a subscription with ICM. In so doing, Illich expressly agreed to ICM's Terms of Use ("TOU") by affirmatively clicking a box on not one, but two, data entry pages on ICM's website confirming that he agreed to the TOU. ICM's TOU contain a clear and conspicuous mandatory arbitration agreement and class action waiver provision. *See* Declaration of Joey Rocco ("Rocco Decl."), Ex. A. The mandatory arbitration agreement and class action waiver are enforceable under the FAA and binding precedent including *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011), and *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013). Thus, in accordance with the TOU and well-established authority, ICM respectfully requests that this Court compel arbitration of Illich's claims on an individual basis and dismiss this action.

## BACKGROUND

ICM is a web-based business headquartered in San Diego that provides people finder and public records information to individuals on a paid subscription basis. Rocco Decl. ¶¶ 3-4. ICM provides this information across the United States through www.instantcheckmate.com. *Id.* ¶4. To purchase a subscription with ICM, consumers must register for a paid membership through ICM's website. *Id.* ¶ 5.

Illich's Complaint describes that, in August 2014, he visited ICM's website

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

and then purchased an ICM subscription.  Compl. ¶¶ 33, 36.  Specifically, on August 3, 2014, from the IP address 207.200.116.12, Illich visited ICM's website, requested public records information about a woman, and purchased an ICM subscription.  *Id.*, Rocco. Decl. ¶ 7.  In so doing, Illich (like all ICM subscribers) was required to agree and did affirmatively agree to the TOU twice: once on the website registration page and again on the website check-out page.  *Id.* ¶ 7, Ex. B-C.  Illich could not have purchased an ICM subscription and his credit card could not even have been charged without him twice checking and clicking that he expressly agreed to the hyperlinked TOU.  *Id.* ¶ 7.  The TOU contains a clear and conspicuous mandatory arbitration and class action waiver provision.  *Id.* Ex. A.  Illich expressly agreed to this.  *Id.* ¶ 7.

Illich first agreed to ICM's TOU and its arbitration requirement after he arrived on the website registration page.  Here, he provided his first name, last name, and email address and clicked a button confirming his agreement to ICM's

DEFENDANT INSTANT CHECKMATE INC'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

hyperlinked TOU.  *Id.* ¶¶ 7-8, Ex. B.  The website registration page is shown below: *Id.*  After this, Illich proceeded to the website's check-out page and again agreed to ICM's TOU and its arbitration requirement.   As a condition to purchase an ICM subscription, Illich entered his credit card information and checked a box stating "I agree to the Instant Checkmate Terms of Use, Limited License, and Privacy Policy" along with the hyperlinked TOU.  *Id.* ¶ 9, Ex. C.  This portion of the website page appears below:



The hyperlinked TOU clearly and conspicuously disclosed its mandatory

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   arbitration and class action waiver provision.  On page 1, in capital letters, the TOU

2   states:

3   # InstantCheckmate.com Website Terms of Use

4   **Date of last revision: July 10th, 2012**

5   IMPORTANT - PLEASE READ THESE TERMS OF USE. THIS AGREEMENT CONTAINS

6   DISCLAIMERS OF WARRANTIES (see Section 8), LIMITATIONS OF LIABILITY, AN

7   EXCLUSIVE REMEDY (see Section 9), THE REQUIREMENT TO ARBITRATE ANY AND
    ALL CLAIMS (see Section 11). THESE PROVISIONS FORM AN ESSENTIAL BASIS OF

8   OUR AGREEMENT.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

*Id.* Ex. A.  At Section 11, the TOU then provides:

## 11) Arbitration

a) YOU UNDERSTAND AND AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND Instant Checkmate, ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES, INCLUDING, WITHOUT LIMITATION, TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION, AND THE ISSUE OF ARBITRABILITY, SHALL BE RESOLVED BY THE FINAL AND BINDING ARBITRATION PROCEDURES SET BELOW. THE PARTIES ACKNOLWEDGE AND AGREE THAT ANY SUCH CLAIMS SHALL BE BROUGHT SOLELY IN THE PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE PROCEEDING, OR PRIVATE ATTORNEY GENERAL CAPACITY. THE PARTIES FURTHER AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL. ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT. JUDGMENT UPON ANY AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED BY A NEVADA STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF. THIS ARBITRATION CONTRACT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND ITS INTERPRETATION, APPLICATION, ENFORCEMENT AND PROCEEDINGS HEREUNDER SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA").

**The following procedures shall apply:**

i) Any party that intends to make a claim shall first notify the opposing party in writing of such intention and shall describe in such notice, with reasonable particularity, the nature and basis of such claim, and the total amount of the claim. Within thirty (30) days of receipt of such notice, the party receiving notice of a claim shall provide a written response which, with reasonable particularity, sets forth its position concerning the claim. If the parties are unable to resolve the dispute arising from the claim by good faith negotiations to be conducted within the thirty (30)-day period following the written response, either of them may initiate binding arbitration pursuant to the terms and conditions set forth below.

ii) In the event a party elects to proceed with binding arbitration, it shall provide written notice thereof to the other party by registered or certified mail. The arbitration shall be conducted by Judicate West, and shall be conducted using the then current Judicate West commercial rules and regulations (except as varied by this agreement). The arbitration shall take place in San Diego, CA, but may proceed telephonically in the event the total amount of the claim does not exceed $2,500 U.S. dollars (if the claimant so chooses).

iii) Separate and apart from the agreement to arbitrate set forth above, the parties hereby independently waive any right to bring or participate in any class action in any way related to, or arising from, this agreement.

The website pages shown and quoted above, and attached as exhibits, are true and accurate copies of those pages as they existed on ICM's website in August 2014. Rocco Decl. ¶¶ 5, 8, 9.  Thus, in a "belt and suspenders" way, ICM required Illich to twice take affirmative action confirming his express agreement to ICM's

1    hyperlinked TOU and its arbitration requirement as a condition for purchasing an

2    ICM subscription.  Illich did just this; yet, he then filed this action anyway.

3            For his Complaint, Illich contends *inter alia* that ICM failed to disclose that,

4    if subscribers want additional data beyond that contained in ICM's standard reports,

5    ICM will provide premium data for an additional fee.  Compl. ¶¶ 37-38.  (As an

6    aside, Illich's Complaint appears to overlook that ICM provides criminal records,

7    mugshots, marriage and divorce records, and social media profile information in its

8    standard reports.)  On his behalf and on behalf of a putative class, Illich asserts

9    violations of California's Consumer Legal Remedies Act, Unfair Competition Law

10   and False Advertising Law as well as various fraud claims.  Compl. ¶¶ 39-113.

11   Illich's claims may only be brought in arbitration on an individual basis.

## ARGUMENT

## I.      The Federal Arbitration Act Mandates Arbitration Here.

14          The parties agreed that the FAA would apply to their transaction pursuant to

15   the arbitration requirement set forth in the TOU.  *See* Rocco Decl., Ex. A at ¶ 11.

16   The FAA provides that written agreements to resolve controversies by arbitration

17   "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

18   or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA's purpose

19   is to encourage arbitration and permit parties who have agreed to arbitrate disputes

20   to proceed without court-imposed delay.  *Southland Corp. v. Keating*, 465 U.S. 1, 7,

21   10 (1984) ("Contracts to arbitrate are not to be avoided by allowing one party to

22   ignore the contract and resort to the courts.")

23          The FAA embodies a broad federal policy favoring arbitration.

24   *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987).  Thus,

25   binding Supreme Court precedent holds that enforcement of an arbitration agreement

26   "should not be denied unless it may be said with positive assurance that the

27   arbitration clause is not susceptible of an interpretation that covers the asserted

28

**V E N A B L E   L L P**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

dispute.  Doubts should be resolved in favor of coverage." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).  The Ninth Circuit has likewise emphasized that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 719 (9th Cir. 1999) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).

"The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4).  Once these tests have been met, the court must compel arbitration when a party bound to the agreement has refused to comply with its terms.  *See* 9 U.S.C. § 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Further, the court has discretion under Section 3 of the FAA to dismiss the action if all of the claims before the court are arbitrable.  *See* 9 U.S.C. § 3; *Sparling v. Hoffman Constr. Co., Inc.,* 864 F.2d 635, 638 (9th Cir. 1988) (holding that even though Section 3 of the FAA, by its terms, only authorizes the court "to grant a stay pending arbitration," Section 3 does not "limit the court's authority to grant a dismissal" and affirming dismissal of action where all claims were held arbitrable). "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration...." *Luna v. Kemira Specialty, Inc.,* 575 F.Supp.2d 1166, 1178 (C.D. Cal. 2008) (emphasis in original) (quoting *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992)). Here, all of Illich's claims are subject to arbitration.

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

## A.    The Arbitration Agreement Is Valid And Enforceable.

Looking to the TOU's arbitration requirement, there can be no challenge to its validity.  It is clearly and conspicuously disclosed, straightforward and plainly written, and by no means unconscionable or against public policy.  There can also be no dispute that, as a condition to purchase an ICM subscription and by affirmative action, Illich expressly agreed to the TOU and its arbitration requirement.  Thus, it is enforceable.

Consistent with well-established Supreme Court precedent, courts in the Ninth Circuit have consistently recognized that contracts formed in Internet transactions are enforceable like all other contracts and have regularly enforced "clickwrap" agreements containing arbitration and related provisions.  *See Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 918 (N.D. Cal. 2011) (enforcing arbitration provision set forth in website's hyperlinked "terms of service"); *Crawford v. Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 WL 6606563, at *8 (S.D. Cal. Nov. 5, 2014) (enforcing venue selection clause set forth in clickwrap agreement and granting motion to change venue); *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *18 (N.D. Cal. June 25, 2014) (enforcing arbitration clause set forth in hyperlinked terms and dismissing claims); *Walsh v. Microsoft Corp.*, No. C14-424-MJP, 2014 WL 4168479, at *3-4 (W.D. Wash. Aug. 20, 2014) (compelling arbitration in light of arbitration clause set forth in clickwrap agreement); *Beard v. PayPal, Inc.*, 2010 WL 654390, at *1 (D. Or. Feb. 19, 2010) (enforcing clickwrap agreement that included forum selection clause where user had access to agreement on website and checked box indicating that she had agreed); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (noting in *dicta* that "[c]ourts have also been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with the use of the website").

Enforcing a very similar clickwrap agreement, the court in *Swift* held that the agreement's arbitration provision was valid and that the plaintiff had sufficient notice that she was assenting because she "was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept[.]'" *Swift*, 805 F. Supp.2d at 912. Like the arbitration provision set forth in the TOU on ICM's website, the terms of service that the plaintiff challenged in *Swift* were linked by a blue hyperlink directly below the button that she was required to click as a condition for purchase. *Id.* at 911. The court rejected plaintiff's contention that a reasonably prudent consumer would not know that he or she was entering into a binding legal agreement, holding that "clickwrap presentations providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient." *Id.* at 912.

As in *Swift*, a valid agreement to arbitrate exists here because Illich agreed to arbitration and had sufficient notice of the terms to which he was assenting. Illich voluntarily and affirmatively clicked the two boxes and thus agreed to the hyperlinked TOU that clearly and conspicuously disclosed the arbitration requirement. Rocco Decl. ¶¶ 7-10, Ex. A-C. Because Illich was provided with an opportunity to review the TOU and then expressly agreed to the TOU, its arbitration requirement is enforceable against him.

**B.    The Arbitration Agreement Encompasses All Of Illich's Claims.**

As noted above, where "the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute.'"  *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. at 650 (quoting *United Steelworkers of America*, 363 U.S. at 582-83).  Here, the arbitration agreement requires arbitration of "***all claims, disputes or controversies*** between [Illich] and [ICM] . . . including, without limitation, tort and contract claims, claims based upon any federal, state or local statute, law, ordinance or regulation[.]"  Rocco Decl., Ex. A at ¶ 11 (emphasis added).  As such, the arbitration agreement encompasses all of Illich's claims.

## II.   The Arbitrator Should Hear Illich's Claims On An Individual Basis.

The Supreme Court  requires that "courts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify *with whom* [the parties] choose to arbitrate their disputes.'"  *Am. Express Co.*, 133 S. Ct. at 2309 (quoting *Stolt-Nielsen S.A. v. Animal Fees Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 1774 (2010) (internal citation omitted).  Thus, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so[.]"  *Stolt-Nielsen S.A.*, 559 U.S. at 684-85, 130 S. Ct. at 1775 ("a class-action arbitration changes the nature of the arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator"); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) (arbitration agreement, including its class action waiver, should have been enforced under the FAA); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit").

Here, the TOU expressly prohibits class claims.  At Section 11, the TOU provides that the: "PARTIES ACKNOWLEDGE AND AGREE THAT ANY SUCH CLAIMS SHALL BE BROUGHT SOLELY IN THE PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

DEFENDANT INSTANT CHECKMATE INC'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

PURPORTED CLASS REPRESENTATIVE PROCEEDING, OR PRIVATE ATTORNEY GENERAL CAPACITY." Rocco. Decl., Ex. A at ¶ 11. The TOU further states: "Separate and apart from the agreement to arbitrate set forth above, the parties hereby independently waive any right to bring or participate in any class action in any way related to, or arising from this agreement." *Id.*

Accordingly, applying binding Supreme Court precedent and the plain language of the TOU, this Court should direct that the arbitration be limited to Illich's individual claims. *See Am. Express Co.*, 133 S. Ct. at 2310 (noting that class action waiver "limits arbitration to the two contracting parties"); *Swift*, 805 F.Supp. at 910 (noting the Supreme Court's holding in *Concepcion* that "unless the parties explicitly agreed to class arbitration, arbitrations could only proceed on an individual basis" and granting motion to compel arbitration); *Dauod v. Ameriprise Fin. Servs. Inc.*, No. 8:10-cv-00302 (CJC)(MANx), 2011 WL 5166711, at *6 (S.D. Cal. Oct. 12, 2011) (holding class action waiver in arbitration agreement was enforceable, dismissing class action allegations with prejudice and ordering that plaintiff pursue remaining claims as an individual in arbitration).

## III. Alternatively, the Court Should Order a Trial on Arbitrability.

If the Court nonetheless has any doubt about whether to compel arbitration, the Court should stay all proceedings except to order a trial on the arbitrability pursuant to Section 4 of the FAA which states "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

DEFENDANT INSTANT CHECKMATE INC'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Instant Checkmate, Inc. respectfully requests that this Court enter an order compelling Plaintiff Milo Illich to arbitrate his individual claims and dismissing this action.

Dated:  February 17, 2015                    VENABLE LLP


                                             By:   /s/ Ari N. Rothman
                                             ─────────────────────────
                                                   Ari N. Rothman

                                             Attorneys for Defendant
                                             INSTANT CHECKMATE, INC.

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

DEFENDANT INSTANT CHECKMATE INC'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO COMPEL ARBITRATION

# CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I declare under penalty of perjury that the foregoing is true and correct.

By:   /s/ Ari N. Rothman

Ari N. Rothman

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

DEFENDANT INSTANT CHECKMATE INC'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION